UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LEWIS L. BOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:23-cv-00956-JPH-CSW |
| | ) |
| ALPHA PHI ALPHA, | ) |
| RONALD D. STOVALL, JR., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Plaintiff Lewis Bond sued a fraternity, Alpha Phi Alpha (APA), and Ronald D. Stovall, an APA Regional Vice President, after receiving a letter of expulsion from Mr. Stovall. Mr. Bond alleges APA violated its bylaws and his due process rights by expelling him without prior notice or hearing and barring him from readmission. Mr. Bond asserts multiple claims against APA and Mr. Stovall. APA filed a motion to dismiss. Dkt. [15]. For the reasons that follow, that motion is **GRANTED**.

## I.
## Facts and Background

Because Defendants have moved for dismissal under 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011).

In 2000, while Mr. Bond attended Chicago State University, he joined APA. Dkt. 1 at 3. Twenty years later, in October 2020, Mr. Bond requested copies of his membership records from APA's national office in Baltimore. *Id.*

1

at 3.  He hoped to reinstate his membership as an alumnus and resume his life membership privileges.  The next month, APA sent him a "membership shingle certificate," which said that he was a member of APA, initiated in 2000 at Chicago State.  Dkt. 1-2 at 4.  Mr. Bond received a letter from General President Willis Lonzer that "welcome[d] [him] back to the Brotherhood."  Dkt. 1-3 at 1.  Mr. Bond believed the process had concluded, and he had fully reinstated his membership.  Dkt. 1 at 5.

Then, on June 21, 2023, Defendant Ronald Stovall, an APA Regional Vice President in Ohio, sent Mr. Bond a letter terminating his membership in APA.  Dkt. 1-4 at 1–2.  Mr. Stovall said that an audit revealed Mr. Bond had failed to meet three program requirements needed to verify his membership.  *Id.*[1]

Mr. Bond brings the following claims: (1) failure to adopt the legal standard/procedure for membership expulsion; (2) APA's violation of their bylaws and constitution; (3) a due process violation; (4) negligence; (5) breach of express and/or implied contract; and (6) a violation of Chicago State's "no hazing" policy.  He seeks monetary damages and injunctive relief.

Mr. Bond filed a motion for summary judgment.  Dkt. [10].  Defendants filed a motion to dismiss.[2]  Dkt. 15.  Mr. Bond has also filed a motion to vacate,

---

[1] Mr. Bond alleges that this termination was in violation of APA's bylaws, which he has attached to his complaint.  Dkt. 1-1.
[2] Mr. Bond argues that Defendants' motion is untimely.  Dkt. 37 at 2.  However, they timely waived service and had until August 1, 2023 to file their motion to dismiss under Rule 12.  *See* Fed. R. Civ P. 12(a); dkt. 12-1 (Defendants' waiver of service).  They timely filed their motion on August 1, 2023.

dkt. [45], and a Motion to Object to Order, dkt. [65]. The Defendants filed a motion for sanctions. Dkt. [52].

## II.
## Legal Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under Rule 12(b)(6), the Court will "accept the well-pleaded facts in the complaint as true," but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley*, 671 F.3d at 616.

## III.
## Analysis

The parties rely on Indiana law in their briefing, and "[w]hen there is no dispute over which state's law applies, the court will apply the substantive law of the state in which the federal court sits." *See Kolchinsky v. Western Dairy Transport, LLC*, 949 F.3d 1010, 1013 n.2 (7th Cir. 2020). Therefore, Indiana law will apply to the state law claims.

### A. Claims 1 and 2: Violation of bylaws

Mr. Bond claims that APA wrongly expelled him in violation of its bylaws and constitution. Dkt. 1 at 10–11. The general rule in Indiana is that "courts will not interfere to control the administration of the constitution and by-laws" of voluntary associations. *Indiana High Sch. Athletic Ass'n, Inc. v. Reyes*, 694 N.E.2d 249, 256 (Ind. 1997). Defendants argue an exception to this rule—"where the decision of the voluntary membership association constitutes fraud or other illegality"—does not apply. *See id.*; dkt. 16 at 4–5. Mr. Bond responds that the fraud exception applies. Dkt. 37 at 3–6. He argues that APA may have lost his records, which affected its revocation decision. *Id.* Mr. Bond contends that "further exploration of the facts" could provide evidence of fraud. Dkt. 37 at 6.

Allegations of fraud are subject to a heightened pleading standard under Rule 9(b), which requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) ("The plaintiff must describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story."). Mr. Bond provides no factual support for his assertions that his records could have been lost, or that APA committed fraud, so his claims are purely speculative. Therefore, Mr. Bond has alleged no facts showing that the fraud exception applies or any other basis for the Court to meddle with APA's administration of its

4

constitution and bylaws.³  Mr. Bond's claims alleging a violation of the bylaws are **dismissed.**  *See Ashcroft*, 556 U.S. at 678.

### B. Claim 3: Fourteenth Amendment Due Process Violation

"A due-process violation occurs when there has been: (i) a deprivation by state action of a protected interest . . . and (ii) inadequate state process." *Sherwood v. Marchiori*, 76 F.4th 688, 694 (7th Cir. 2023).  Defendants argue that Mr. Bond has failed to allege state action, so his complaint must be dismissed.  Dkt. 16 at 6.  Mr. Bond disagrees and asks for "further discovery to explore the extent of any state involvement."  Dkt. 37 at 7.

Mr. Bond is required to assert something more than the conclusory allegation that state action exists.  *See McCauley*, 671 F.3d at 616 (noting "the complaint must contain allegations plausibly suggesting . . . an entitlement to relief" and "conclusory allegations merely reciting the elements of the claim" are insufficient).  Further, the APA is a fraternity and a "corporate entity," according to Mr. Bond, *see* dkt. 1 at 1, not a state actor.  Mr. Bond has made no allegations that even suggest potential state action so this claim is **dismissed.**

### C. Claim 4: Negligence

Defendants argue that Mr. Bond is precluded from asserting a negligence claim because he is also asserting a breach of contract claim based on the

---

³ The only other exception to the general non-interference rule is "where the decision of the voluntary membership association infringes upon a personal liberty or property right."  *Reyes*, 94 N.E.2d at 256.  Mr. Bond argues this determination is "context-dependent," dkt. 37 at 5, but fails to allege a liberty or property right to APA membership.  Therefore, this exception does not apply.

5

same facts, and he has not established that Defendants owed him an independent duty that would give rise to a negligence claim. Dkt. 16 at 6–7. Mr. Bond responds that his negligence claim arises from a separate and distinct duty owed by defendant to plaintiff independent of contract. Dkt. 37 at 8.

The bylaws of a not-for-profit corporation are "generally considered to be a contract between the corporation and its members." *Reyes*, 694 N.E.2d at 256. "Unless there is evidence of an independent tort that would have existed if there was no contract between the parties, they should not be permitted to expand that breach of contract into a tort claim against either the principal or its agents by claiming negligence as the basis of the breach." *Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 638 (Ind. Ct. App. 2015).

In his complaint, Mr. Bond says that Defendants had a "legal duty to fulfill all the legal requirements" before revoking his lifetime membership. Dkt. 1 at 13–14. Since that invokes the bylaws, it implicates breach of contract rather than an "independent tort." *Jaffri*, 26 N.E.3d at 638. And Mr. Bond's conclusory allegations do not identify an independent tort giving rise to a negligence claim here. Dkt. 1 at 13 ("[T]he defendants have the duty of care towards the plaintiff that the defendants breached and caused . . . damages to plaintiff."). Therefore, his negligence claim is **dismissed.**

### D. Claim 5: Breach of Contract

Defendants argue APA's constitution and bylaws are not a binding contract but rather a "governing document which is not contractual in nature."

6

Dkt. 16 at 7. Further, even if the constitution and bylaws are a contract, there's been no breach here because APA followed its internal procedures in terminating Mr. Bond's membership. Dkt. 16 at 7. Mr. Bond responds that certain provisions are "inherently contractual in nature" and argues that the existence of a contract should be addressed through discovery. Dkt. 37 at 9.

The bylaws of a not-for-profit corporation are "generally considered to be a contract between the corporation and its members and among the members themselves." *Reyes*, 694 N.E.2d at 256. "Absent fraud, other illegality, or abuse of civil or property rights having their origin elsewhere, Indiana courts will not interfere in the internal affairs of voluntary membership associations." *Id.* The right of a voluntary association to make, interpret, and enforce its bylaws is "sacred." *Id.* Therefore, the breach of contract claim is **dismissed.**

### E. Claim 6: No Hazing Policy

In his complaint, Mr. Bond alleges that Chicago State University had a no hazing policy, that he was hazed, and that economic and non-economic damages followed. Dkt. 1 at 9–10, 14–15. Defendants argue that Chicago State University's policy doesn't apply to the denial of Mr. Bond's APA membership privileges and that regardless they did not haze Mr. Bond. Dkt. 16 at 7–8. Mr. Bond responds that whether Defendants' conduct met the definition of hazing is a question of fact. Dkt. 37 at 11–13.

Mr. Stovall's letter to Mr. Bond came independent of Chicago State and none of the allegations regarding revocation of his membership implicate Chicago State. *See* dkt. 1 at 3–9. Mr. Bond's complaint states a single

7

conclusory allegation on this claim: "Hazing is committed against Plaintiff." *Id.* at 10.  Because his complaint does not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face" related to Chicago State University's hazing policy, this claim is **dismissed.**  *See Ashcroft*, 556 U.S. at 678.[4]

## IV.
## Other Motions

### A. Motion for Summary Judgment

Mr. Bond cannot succeed on summary judgment when he has failed to state a claim.  Therefore, his motion for summary judgment is **denied as moot**.  Dkt. 10.

### B. Mr. Bond's Motion to Vacate

Mr. Bond seeks to vacate his expulsion from APA because it is inconsistent with fraternal law.  Dkt. 45.  Mr. Bond cites Rule 60's provisions allowing for relief from an order because of fraud or when the judgment is void.  Fed. R. Civ. P. Rule 60(b)(3)–(4).  Mr. Bond argues Mr. Stovall lacked authority to expel him and violated APA bylaws in doing so.  Dkt. 45 at 1–3.

Motions to vacate under Rule 60(b) "relieve a party . . . from . . . a[n] order, or proceeding."  Fed. R. Civ. P. 60(b).  It therefore does not apply to the actions of other parties, such as APA.  *See id.*  So, to the extent the motion,

---

[4] Mr. Bond labels as Claim 7 a request for damages.  That is not an independent claim and Mr. Bond cannot recover damages because his complaint fails to state a claim, so it is not addressed further.

8

dkt. 45, seeks to reinstate Mr. Bond to the APA, it is **denied** for the reason above.

### C. Defendants' Motion for Sanctions

Defendants filed a motion for sanctions under Rule 11 against Mr. Bond based on his Motion to Vacate, dkt. 45. Defendants argue that this motion was frivolous, and they seek attorney fees and expenses. Dkt. 53 at 1; *see* Fed. R. Civ. P. 11(b)–(c).

Rule 11(b) says that by presenting a pleading to the court, an unrepresented party "certifies to the best of the person's knowledge . . . the factual contentions have evidentiary support." *See* Fed. R. Civ. P. 11(b)(4). The rule "is principally designed to prevent baseless filings." *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020). "If the court determines that a lawyer or party has violated Rule 11(b), the court may impose an appropriate sanction on any . . . party that violated the rule or is responsible for the violation." *Id.* Any sanction imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and can include fines, "nonmonetary directives," or payment to the opposing party. Fed. R. Civ. P. 11(c)(4).

Rule 11 is permissive—the Court "may" impose sanctions—and sanctions can be imposed for frivolous filings, even against a *pro se* litigant. *See* Fed. R. Civ. P. 11(c); *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990) ("Status as a *pro se* litigant may be taken into account, but sanctions can be imposed for any suit that is frivolous."). Still, *pro se* litigants "should be

9

granted appropriate latitude in their dealings with courts and counsel for correct and honorable reasons." *DJM Logistics, Inc. v. FedEx Ground Package Sys., Inc.*, 39 F.4th 408, 415 (7th Cir. 2022).

Here, Mr. Bond's motion was just three pages and stated his goal—to reenter APA—consistent with his other filings in this case. Defendants seek attorney fees for having to respond to this motion. Dkt. 52 at 1. Given the motion's length and subject matter, and because Mr. Bond has not filed a continuous stream of frivolous motions, the Court declines to impose sanctions. But to APA's point, Mr. Bond is warned that frivolous filings could be grounds for sanctions. *See DJM Logistics*, 39 F.4th at 415 (upholding sanctions that admonished plaintiff but acknowledging that "patience can be exhausted, in the face of persistent violative conduct," and at that point district court can move to more severe consequences). Therefore, Defendants' motion for sanctions is **denied**. Dkt. 52.

### D. Mr. Bond's Motion to Object

Mr. Bond filed a motion, dkt. 65, objecting to Magistrate Judge Wildeman's order denying his motion to compel discovery, dkt. 64. Since the motion to dismiss has been granted, discovery disputes are now moot and Mr. Bond's motion is therefore **denied as moot**. Dkt. 65.

## V. Conclusion

Defendants' motion to dismiss, dkt. [15] is **GRANTED**. Mr. Bond shall have **through April 22, 2024** to file a motion for leave to amend his complaint if he believes that it would not be futile. *See, e.g., Runnion ex rel. Runnion v.*

10

*Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).  If Mr. Bond does not seek leave to amend, the Court will enter final judgment.  All other pending motions, dkts. [10]; [45]; [52]; and [65], are **DENIED.**

**SO ORDERED.**

Date: 3/21/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

LEWIS L. BOND
9834 S Ellis Ave
Chicago, IL 60628

All electronically registered counsel